UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CATHERINE M.,[1]

                                                 Plaintiff,                  DECISION AND ORDER

-vs-

                                                                                21-CV-6283 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                               Defendant.

_____

## I. INTRODUCTION

In March 2021, Catherine M. ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Compl., Mar. 29, 2021, ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Jan. 31, 2022, ECF No. 14; Def.'s Mot., Mar. 31, 2022, ECF No. 17. For the reasons set forth below, Claimant's motion for judgment on the pleadings [ECF No. 14] is granted only to the extent that the matter is remanded for further administrative proceedings consistent with this decision and order. The Commissioner's motion [ECF No. 17] is denied. The Clerk of Court is directed to close this case.

## II. BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

A. Claimant's Applications

Claimant filed applications for DIB and SSI benefits in November 2017, alleging a disability onset date of September 16, 2017. Transcript ("Tr."), 205 and 207,[2] Aug. 17, 2021, ECF No. 9. She listed multiple physical and mental conditions that she claimed limited her ability to work: peripheral neuropathy, fibromyalgia, back problem, asthma, high cholesterol, depression, acid reflux, anxiety, high blood pressure, and a foot issue. Tr. 251. In March 2018, Claimant was found "not disabled," and her claims for DIB and SSI benefits were denied. Tr. 90. Claimant requested a reconsideration of the initial determination and, after a review of the evidence in her case record by both a state agency psychological consultant (Tr. 101–02) and a state agency medical consultant (Tr. 105–06) in April 2018, Claimant was again found "not disabled." Tr. 109.

B. Claimant's Hearings Before the ALJ

After the Commissioner denied her applications at the initial level, Claimant appeared with counsel on April 16, 2020 for a hearing before an Administrative Law Judge ("ALJ"). Tr. 36. In his opening remarks, Claimant's counsel stated the following:

> . . . It's very difficult in this case to focus on any one thing. There's numerous issues up to and including now home care . . . .
>
> * * *
>
> There is . . . some botched surgeries or problems with her feet . . . . some neuropathy . . . . lifting and bending restrictions resulting from those issues . . . a[n] application for a handicapped permit because the Claimant's unable to walk more than 200 feet at any one time . . . . Add that all up physically

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

>with the mental assessments . . . where it's clear there are severe problems . . . . in my opinion, is at a listing level . . . .

Tr. 43–44 (internal citations to the record omitted).

Claimant testified that she is 50 years old, a high school graduate, and can read, write, do simple math, and handle money. Tr. 45–48. She stated that she has been married for almost 17 years, and has two children and a husband, who works as a chemical processor for Eastman Kodak. Tr. 46. When the ALJ asked Claimant herself what prevents her from working a full-time job, Claimant identified "[t]he inability to sit in a chair for long periods of time . . . . carpal tunnel in [her] hands, in [her] wrists, neuropathy in [her] feet and [her] . . . lower back." Tr. 48. She stated that she can only sit for about two hours at a time, can only stand or walk for about 20 minutes, only sleeps between four and five hours a night, and smokes a pack of cigarettes a day. Tr. 48–50. She said she takes hydrocodone for degenerative disc disease, Xanax for anxiety, Zoloft for depression, blood pressure medicine, medicine to reduce cholesterol, cyclobenzaprine for pain, amitriptyline, and has an inhaler for her asthma. Tr. 49.

In addition to her physical impairments, Claimant's counsel asked her about her mental impairments. Claimant testified that she had attempted suicide and was hospitalized for a night in 1999 or 2000, and has had "a few" panic attacks in which she gets "clammy and nervous," most recently a year before the hearing. Tr. 51–52. She stated that she experiences general nervousness (Tr. 51), and sometimes has trouble following through on tasks that she starts. Tr. 52. However, she also stated that she does not have trouble understanding or following directions, making her own decisions, agreeing with authority figures, paying attention, or keeping appointments. Tr. 52. She said she has a good relationship with her friends and family, "usually got along good with

[her] coworkers" but sometimes had misunderstandings, and sometimes has a problem remembering things. Tr. 53–55. In 2007 she saw a therapist for three months regarding communication issues she was having with her husband, but is being treated for anxiety and depression by "just [her] primary care doctor." Tr. 54. She said that she went to her doctor for help controlling mood swings she was having, and that she does not have them when on the medication. Tr. 55.

With respect to her activities of daily living, Claimant testified that she lives at home with her husband and one of her children. Tr. 57. She stated that her husband does the cooking, cleaning, laundry, taking care of their disabled daughter, and taking care of the dogs. Tr. 57. Claimant cannot drive or go shopping alone, and has to use a motorized scooter while her husband helps her get things off the shelf. Tr. 56–57. She said she doesn't go out to church or to clubs, goes shopping only about once a month, and only goes to her friend's house to socialize once every three months. Tr. 57. On a typical day, she gets up, has coffee, watches TV, interacts with her animals and husband when he's home, and then goes to bed. Tr. 58. She stated that she can pick up five pounds at the most, and has trouble bending over and sometimes can't feel her fingers. Tr. 59. She can bathe and dress herself, but has trouble getting in and out of the bathtub or shower. Tr. 60. Her doctor prescribed her a "knee scooter" to use in her home because her right leg is non-weight bearing at present. Tr. 61.

In addition to Claimant's testimony, the ALJ also took testimony from an impartial vocational expert (VE) at the hearing. The VE classified Claimant's work at various jobs from 2005 to 2008 as "customer service representative," her work at Volt Technology from 2008 to 2009 as an accounting clerk, and her work at the University of Rochester from

2009 to 2017 as a hospital insurance clerk. Tr. 64–66. In response to a hypothetical proposed by the ALJ that involved sedentary exertional work levels with limitations similar to those eventually reflected in Claimant's RFC, the VE testified that Claimant could both do her past relevant work, and perform a number of other positions available in the national economy. Tr. 68–69.

C. The ALJ's Decision

On April 29, 2020, the ALJ issued a decision finding that Claimant was not disabled, and therefore did not qualify for DIB or SSI benefits. Tr. 27.

At the outset, the ALJ found that Claimant met the insured status requirements for DIB benefits [3] through December 31, 2022. Tr. 18. Then, at step one of the Commissioner's "five-step, sequential evaluation process," [4] the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date of September 16, 2017. Tr. 19.

---

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB benefits. See 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

At step two, the ALJ determined that Claimant has had the following severe impairments: degenerative disc disease of the lumbar spine, idiopathic peripheral neuropathy, degenerative joint disease of the knees, asthma, and status-post surgery for an infection in the heel of her right foot. Tr. 19. He found that Claimant's medically determinable physical impairment of mild bilateral carpal tunnel syndrome was non-severe. In addition, after performing the "special technique" required under 20 C.F.R. § 404.1520a and § 416.920a for all mental impairments,[5] the ALJ concluded that Claimant's medically determinable mental impairments of depression and somatic symptoms disorder were non-severe because Claimant had only mild limitations in the four functional areas of ability to understand, remember or apply information; to interact with others; to adapt or manage herself; and to concentrate, persist, or maintain pace. Tr. 20.

At step three, the ALJ found that the severity of Claimant's impairments did not meet or medically equal the criteria of listings in 20 C.F.R. Part 404, Subpart P, Appendix

---

[5] When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a). First, the ALJ must evaluate the claimant using "Paragraph A" criteria to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1, § 12.00"). *See* 20 C.F.R. § 404.1520a(b)(1); § 416.920a(b)(1). If the claimant does have such an impairment, the ALJ must assess the claimant's limitations in four broad areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (collectively, the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3); § 416.920a(c)(3).

The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4); § 416.920a(c)(4). To satisfy the "Paragraph B" criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria. App'x 1, § 12.00F(2). After rating the degree of functional limitation resulting from the claimant's mental impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d); § 416.920a(d).

1, including Listing 1.04 – Disorders of the spine, and Listing 3.03 - Asthma. Tr. 21. Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Claimant had the residual functional capacity [6] ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), with the following limitations:

> [She] can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. The claimant can frequently climb ramps or stairs or stop. The claimant must avoid concentrated exposure to extreme heat and cold, wetness, humidity, or respiratory irritants.

Tr. 22 (footnotes omitted).

At step four, the ALJ found that Claimant is capable of performing her past relevant work as an insurance clerk, accounting clerk, and the composite job of a customer service representative and telecommunicator. Tr. 25. At step five, after considering the Medical-Vocational Guidelines, the ALJ found that in addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that Claimant can perform based on her age, education, work experience, transferrable skills, and RFC: data entry clerk, data examination clerk, and sorter. Tr. 27. Therefore, the ALJ found that Claimant was not disabled, and not entitled to DIB or SSI benefits. *Id*.

On January 28, 2021, the Commissioner's Appeals Council denied Claimant's request to review the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner.

### III. LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to disability insurance

---

[6] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability that would entitle him or her to an award of benefits. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner

applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted). Yet although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (quotation marks omitted).

## IV. DISCUSSION

In her motion for judgment on the pleadings, Claimant presents three issues for the Court's review. Pl. Mem. of Law, Jan. 31, 2022, ECF No. 15. First, Claimant argues that the ALJ's RFC determination is the product of legal error because the ALJ failed to properly evaluate the opinion evidence about Plaintiff's mental impairments. Alternatively, she argues that the RFC determination is unsupported by substantial evidence because the ALJ failed to reconcile his step 2 mental limitation findings with the RFC. Lastly, she maintains that the ALJ's determination that Plaintiff is capable of performing sedentary work is unsupported by substantial evidence. The Commissioner maintains that the ALJ

did not commit legal error in her decision, and that the ALJ's RFC determination was based on substantial evidence. Def. Mem. of Law, Mar. 31, 2022, ECF No. 17-1. For ease of discussion, the Court will address Claimant's two arguments regarding the ALJ's step 2 findings together.

A. The ALJ's Step 2 Findings

At step 2 of the sequential evaluation process, the ALJ stated that Claimant's "medically determinable mental impairments of depression and a somatic symptoms disorder, considered singly and in combination, do not cause more than minimal limitation in the [C]laimant's ability to perform basic mental work activities and are therefore nonsevere." Tr. 19. In justifying that conclusion, the ALJ observed that Claimant's primary care doctor – rather than a therapist, psychiatrist, or case manager – treats her for her mental conditions, and discussed the opinions of consultative psychological examiner Thomas Guidera, Ph.D., and state agency psychological examiner James G. Brown, Ph.D. Tr. 19. The ALJ also stated that Claimant's hearing testimony demonstrated that she has only mild limitations in the four areas of mental functioning. Tr. 20.

Dr. Guidera opined in February 2018, in pertinent part, that Claimant "is likely to have severe problems at potential places of work with potential employers, co-workers, and the general public." Tr. 969. However, in his decision the ALJ explained that he found Dr. Guidera's opinion unpersuasive for the following reasons:

> The claimant told Dr. Guidera that her primary care provider had her on a few mental health medications, but that she "does not have a relevant psychiatric history" . . . . In terms of her daily activities, she stated that usually she usually stays home and reads or watches television. On examination, she demonstrated good abstract reasoning skills, good long-term memory recall, and she could perform arithmetic skills of addition, subtraction, and multiplication . . . . Overall, Dr. Guidera concluded that the claimant would have "severe problems" in a work setting with concentration,

>focus, and attention as well as getting along with employers, coworkers, and the general public. Dr. Guidera's findings are inconsistent with the claimant's testimony at her April 16, 2020 hearing. When questioned with regard to attention and concentration and getting along with employers (authority figures) and coworkers, she testified that that she has no difficulties in either area . . . .

Tr. 19–20 (internal citations to the record omitted).

Dr. Brown reviewed Claimant's records in February and April 2018, and opined both times that Claimant's mental impairments were "severe," and that she was "moderately limited" with respect to her ability to complete a normal workday and workweek without interruptions, and her ability to respond appropriately to critical feedback from supervisors. Tr. 87–88. In his decision, the ALJ explained that he found Dr. Brown's opinions unpersuasive because:

>the claimant receives no formal mental health treatment from a psychiatrist or therapist and she acknowledges that she has no difficulty following directions, maintaining attention and concentration, getting along with employers or coworkers, or making her own decisions . . . .

Tr. 20 (internal citations to the record omitted).

In the motion now before the Court, Claimant argues that "the ALJ committed legal error in evaluating the mental limitations opinions of Drs. Guidera and Brown, and provided flawed and insufficient rationale for rejecting this probative evidence of disability." Pl. Mem. of Law at 18. Alternatively, Claimant argues that the ALJ's RFC determination is unsupported by substantial evidence because he failed to reconcile his own step 2 mental limitations findings with the RFC. Pl. Mem. of Law at 19.

*The ALJ's Evaluation of the Opinion Evidence of Drs. Guidera and Brown*

Under regulations effective for all claims filed after March 27, 2017, the ALJ is required to apply 20 C.F.R. § 404.1520c and § 416.920c to evaluate opinion evidence in

the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). § 404.1520c(c) and § 416.920c(c) list a number of factors the Commissioner must consider, including: supportability, consistency, the length and nature of the relationship of the source with claimant, the source's specialization, and other factors "that tend to support or contradict a medical opinion . . . ."

> As the Second Circuit has observed,
>
> The [new] regulations explain that when "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings," the "most important factors . . . are supportability . . . and consistency." *Id*. The regulations further require the agency to "explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision." *Id*. § 404.1520c(b)(2).

*Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).

Under the new regulations, an ALJ's failure to adequately explain how he or she considered the supportability and consistency of a medical opinion in the record is procedural error. *Loucks*, 2022 WL 2189293 at *2. Nevertheless, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures us 'that the substance of the [regulation] was not traversed.'" *Loucks*, 2022 WL 2189293 at *2 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)). On the other hand, if the ALJ has not set forth "good reasons" for finding an opinion unpersuasive, a reviewing court cannot conclude that the error was harmless, and the matter must remanded for the ALJ to "comprehensively set forth its reasons." *Claudio-Montanez v. Kijakazi*, No. 21-2027, 2022 WL 17819123, at *2 (2d Cir. Dec. 20, 2022).

In the present case, the Court finds that the ALJ committed legal error by not clearly articulating how he considered the factors of supportability and consistency in the opinions of Drs. Guidera and Brown, respectively. However, after a searching review of the record, the Court finds that the ALJ presented good reasons for finding the opinions to be unpersuasive, and that the substance of the new regulations was not traversed.

In particular, the ALJ made multiple references to both the absence of a formal mental health treatment record, and to Claimant's hearing testimony. With respect to the absence of a formal mental health treatment record, it is well settled that the ALJ is "entitled to rely not only on what the record says, but also on what it does not say." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). What the record does not show is that Claimant required or pursued any treatment that would indicate a severe impairment: she did not receive any form of counseling for her depression or somatic symptoms disorder, did not require "a battery of powerful psychoactive drugs, in various combinations," and was not subject to frequent – or any – psychiatric hospitalization. *Compare Rivera v. Comm'r of the Soc. Sec. Admin*., No. 19CV4630LJLBCM, 2020 WL 8167136, at *15 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted sub nom. Rivera v. Comm'r of Soc. Sec. Admin*., No. 19-CV-4630 (LJL), 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021). Rather, the record indicates that Claimant's depressive disorder was "well controlled" with medication, and that her primary care physicians' treatment notes reflect that Claimant demonstrated "normal" mood and "appropriate" affect at her office visits. *See, e.g.,* 542, 558, 561–62, 1050, 1098 (treating neurologist, Dr. Shenoy), 1113, 1185 (Dr. Ochoa in Florida), 1189, 1192. *See also Thomas v. Comm'r of Soc. Sec. Admin*., 479 F. Supp.3d 66, 84–88 (S.D.N.Y. Aug. 18, 2020).

As it relates to Claimant's hearing testimony, the ALJ rightly states that Dr. Guidera's findings that Claimant would have "severe problems" in a work setting were "inconsistent." Tr. 20. At the hearing, when asked what prevented her from working, Claimant listed a litany of physical ailments, but did not mention her mental impairments. Tr. 48. Additionally, she testified that she made one suicide attempt over 15 years prior to the hearing, her last panic attack had occurred approximately one year before the hearing, and she did not have trouble understanding directions, following directions, agreeing with authority figures, paying attention, making and keeping appointments, or making her own decisions. Tr. 51–53. She indicated that she has a good relationship with friends and family, does not often have misunderstandings with coworkers and "usually got along good with [her] coworkers." Tr. 52–53, 55. She also stated that she had originally gone to her primary care doctor to help her with her "tough mood swings," and that now she doesn't have the mood swings when she is on her medication. Tr. 54–55. Although Dr. Guidera and Dr. Brown believed Claimant to have "severe" mental impairments, those impairments were not consistent with Claimant's testimony. "It is the function of the [Commissioner and ALJ], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted).

Accordingly, the Court finds that although the ALJ committed procedural error by improperly articulating his consideration of the supportability and consistency factors, but that the substance of the rule was not traversed.

*The ALJ's Failure to Reconcile His Findings with the RFC*

By contrast, the Court finds that the ALJ's failure to account for his findings regarding Claimant's mental impairments with his RFC determination requires remand. 20 C.F.R. § 404.1545(a)(2) and § 416.945(a)(2) call for the ALJ to "consider *all* of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe [ ]' . . ." when assessing a claimant's RFC. (Emphasis added.) Thus, an "RFC determination must account for limitations imposed by both severe and nonsevere impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012). That is, even when substantial evidence supports the ALJ's finding that a medically determinable impairment is nonsevere, it is nevertheless reversible legal error if the ALJ fails to account for the limitations from that impairment when determining the claimant's RFC. *Id.*

In the present case, the Court agrees that the ALJ committed legal error by failing to account for Claimant's mental limitations when determining her RFC. After finding at step 2 that Claimant's depression and somatic symptoms disorder do not cause "more than a minimal limitation in the [C]laimant's ability to do basic work activities," the ALJ determined Claimant's RFC without accounting for – or even mentioning – any of the limitations arising from her mental impairments. *See, e.g.*, *Collins v. Comm'r of Soc. Sec.*, No. 19-CV-01350-LJV, 2020 WL 6488744, at *6 (W.D.N.Y. Nov. 4, 2020) (stating that the Court "cannot be certain that the ALJ actually considered [claimant]'s mental issues when fashioning her RFC" because the ALJ's explanation of her RFC includes no mention of mental limitations whatsoever). Because the record is not clear as to whether the ALJ considered the effects or symptoms of these diagnoses in formulating the RFC, remand

is required so that the ALJ may adequately explain how he accounted for Claimant's mental impairments in her RFC. *See, e.g., Winter v. Comm'r of Soc. Sec.*, No. 18-CV-632-FPG, 2020 WL 2465080, at *3 (W.D.N.Y. May 12, 2020) ("[i]n most cases in which this Court has remanded based on an ALJ's failure to examine non-severe mental impairments as part of her RFC determination, the ALJ either did not discuss the impairments in his or her RFC assessment . . . or merely included boilerplate language and/or made a few references to related evidence . . . .").

B. The ALJ's Determination that Claimant is Capable of Sedentary Work

In his decision, the ALJ discussed the record evidence and concluded that Claimant had the RFC to perform sedentary work with additional postural, exertional, and environmental limitations. Tr. 22–25. In the instant motion, Claimant maintains that the ALJ's determination that Claimant is capable of performing sedentary work is not supported by substantial evidence because it is not supported by competent medical opinion, and evidence subsequent to Claimant's foot surgeries does not support the conclusion that Claimant is capable of standing or walking for up to two hours during the course of a workday, as sedentary employment requires. Tr. 21–23. Because the Court remands the case for further consideration of the Claimant's RFC, the Court will not address Claimant's remaining argument, as the ALJ's correction of his error in failing to account for Claimant's mental limitations in her RFC may impact the ALJ's RFC formulation.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Claimant Catherine M.'s motion for judgment on the pleadings [ECF No. 14] is granted only to the extent that the

matter is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) so that the ALJ can account for Claimant's mental impairments in his RFC discussion. The Commissioner's motion for judgment on the pleadings [ECF No. 17] is denied. The Clerk of Court is directed to enter judgment and close this case.

DATED:     March 24, 2023
           Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge